# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* C.S.

No. 21-0099 (Jackson County 20-JA-1)

## MEMORANDUM DECISION

Petitioner Mother V.S., by counsel Shawn D. Bayliss, appeals the Circuit Court of Jackson County's October 29, 2020, order terminating her parental rights to C.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryanne A. Ball, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period, terminating her parental rights, and denying her post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an initial child abuse and neglect petition against petitioner in February of 2019, alleging drug abuse, overall poor judgment in parenting, and significant physical abuse to one of the children. Specifically, petitioner's then-five-month-old child had significant bruising in the buttocks area resulting in hospitalization. Petitioner refused to admit causing the bruises and suggested that her sister's boyfriend may have bruised the child when she allowed him to watch the children while petitioner abused drugs. The DHHR alleged that petitioner exercised poor judgment by leaving her children in the care of her sister's boyfriend, a man she did not know. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

circuit court adjudicated petitioner as an abusing parent and eventually terminated her parental rights to the children in May of 2019.[2]

Subsequently, petitioner gave birth to C.S., the only child at issue in this appeal, in December of 2019. In January of 2020, the DHHR filed the instant abuse and neglect petition, alleging that petitioner failed to address the conditions of abuse and neglect since the prior proceedings and continued to exercise poor judgment, which endangered the child. Specifically, the DHHR alleged that petitioner entered into a relationship with T.W., the child's father, prior to the end of the earlier proceedings despite the fact that he had served a term of incarceration in Florida for a murder conviction. The DHHR alleged that petitioner admitted to a Child Protective Services ("CPS") worker that the father engaged in domestic violence against her while she was pregnant, including slapping her in the face, and that the couple had a pending case in magistrate court due to their domestic violence. The DHHR concluded that, due to the child's young age, petitioner's lack of participation in services aimed at rectifying the conditions of abuse since the prior case, and her history of poor decision-making, the child's health and wellbeing were in imminent danger.

The circuit court held an adjudicatory hearing in July of 2020. A CPS worker from petitioner's prior case testified that the initial abuse and neglect petition was filed against petitioner due to unexplained bruising on her then five-month-old child's buttocks. The CPS worker also testified that petitioner failed to provide an explanation for the bruising and changed her story several times throughout the proceedings; however, the child's attending physician determined the bruises were nonaccidental. The CPS worker further stated that, due to the aggravated circumstances in the prior case, petitioner was not offered an improvement period or services, other than drug screening, and, as noted above, her parental rights to her two oldest children were eventually terminated in May of 2019.

A CPS worker from the instant case testified that she filed the petition against petitioner due to the aggravated circumstances of the prior terminations in May of 2019 and the fact that petitioner had not taken any steps to remedy the conditions of abuse from those proceedings. However, the CPS worker acknowledged that petitioner had not allowed the father to have contact with the child following his birth and had expressed her intention to not allow any future contact with the father.

Next, Barbara Nelson, a licensed psychologist with Saar Psychological Group, testified regarding her psychological evaluation of petitioner. Ms. Nelson testified that petitioner denied abusing or neglecting her children in the prior proceedings against her and failed to understand why her parental rights were terminated. Ms. Nelson also testified that, as in petitioner's prior case, petitioner continued to exercise poor judgment. Specifically, Ms. Nelson stated that petitioner indicated that she met C.S.'s father while she was at a McDonald's restaurant around March of 2019, permitted him to move in with her just two days later, and became pregnant with C.S. within a week of cohabiting with the father despite his violent criminal history. Ms. Nelson also testified

---

[2]Petitioner filed a direct appeal, and this Court affirmed the circuit court's termination of petitioner's parental rights by memorandum decision. *See In re E.K.*, No. 19-0629, 2020 WL 1674023 (W. Va. Apr. 6, 2020)(memorandum decision).

that psychological testing revealed petitioner had an intellectual disability. Ms. Nelson stated that there were no services the DHHR could provide to improve petitioner's decision-making skills and that petitioner was unable to make important daily decisions such as where to live or who to trust. Ms. Nelson concluded that while petitioner could probably perform the daily tasks of caring for a child, she lacked the decision-making skills to protect a child from the consequences of petitioner's own poor choices.

Petitioner testified and denied that she had known the father of C.S. for only two days prior to moving in with him. Rather, petitioner indicated that they had known each other for three or four months prior to living together. Petitioner further testified that she kicked the father out of the home in October of 2019, prior to the child's birth, because the father became aggressive with her, including slapping her, and that she intended to continue with the prosecution of the father for striking her. According to petitioner's testimony, she understood why her parental rights to her older children had been terminated and that she had made poor decisions while parenting them. Petitioner testified that she would no longer permit a stranger to care for her child and further denied abusing drugs during the prior or instant proceedings. Petitioner testified that she sought out parenting and domestic violence classes on her own accord and was in the process of obtaining her General Education Diploma. Petitioner further testified that her stepmother would provide her with support in caring for the child.

Ultimately, the circuit court adjudicated petitioner as an abusing parent. The circuit court found that petitioner's parental rights to her two older children were terminated based upon her physical abuse of one of the children and that she, thereafter, made no effort to correct the conditions of abuse and neglect. The circuit court found that petitioner allowed C.S.'s father, a virtual stranger, into her home and that they engaged in domestic violence while petitioner was pregnant. The circuit court noted that, although petitioner now acknowledges her poor decision-making skills and took it upon herself to seek out some services, the evidence demonstrated that petitioner did not take these steps until after the instant proceedings were initiated. Due to the aggravated circumstances of a prior involuntary termination of her parental rights and there being no evidence that petitioner remedied the circumstances which led to the prior terminations, the circuit court concluded that petitioner abused the child in this matter.

In September of 2020, the circuit court held a dispositional hearing wherein petitioner requested a post-adjudicatory improvement period. The caseworker testified that the DHHR recommended against granting petitioner an improvement period given her inability to remedy the conditions of abuse or care for the child. The caseworker admitted that petitioner was participating in services, such as drug screens and supervised visitations, and that a referral had recently been made for parenting and adult life skills classes, but she opined that she did not believe these services would aid petitioner in remedying the conditions of abuse. The caseworker based her opinion on Ms. Nelson's testimony from the adjudicatory hearing that petitioner's decision-making skills could not be improved with services and that there were no other services that could be offered by the DHHR. A service provider testified that supervised visits between petitioner and the child went well and that petitioner was attentive during the visits and interacted appropriately with the child; however, she noted that the visits were in a very controlled environment and petitioner was under constant supervision.

3

Petitioner's stepmother testified that the DHHR permitted her to attend one visit with petitioner and the child per month. The stepmother opined that petitioner and the child shared a very strong bond and that the child was always happy to see petitioner at the visits. The stepmother also testified that petitioner was attentive to the child's needs and brought things such as snacks and diapers. The stepmother stated that she would be willing to assist petitioner in caring for the child and believed that petitioner would reach out to her for guidance. The stepmother testified that petitioner had learned from her mistakes and was improving herself. In her opinion, petitioner was completely capable of living on her own and caring for the child.

Petitioner testified that she tried to improve her parenting during the proceedings by taking several classes related to parenting and domestic violence, passing all of her drug screens, and faithfully attending visits. Petitioner further testified that she was willing to live with her stepmother and accept her assistance in raising the child. However, petitioner also opined that she did not need to live with her stepmother and was capable of living as an independent adult who could care for her child.

By order entered on October 29, 2020, the circuit court denied petitioner's motion for a post-adjudicatory improvement period. The circuit court found that petitioner continually failed to acknowledge that her actions led to the termination of her parental rights to her two older children. The circuit court further found that, although petitioner testified that she would participate in services, she failed to accept Ms. Nelson's opinion that she needed continued care for herself and would require substantial and constant support and supervision to raise the child. The circuit court found that petitioner refused to accept her inability to parent the child and that, despite her repeated lapses in judgment related to caring for her children, neither petitioner nor her stepmother believed petitioner needed assistance in caring for C.S. Given petitioner's lack of insight into her own needs and actions, the circuit court found that granting her an improvement period was not in the child's best interest. Based on this evidence, the circuit court found that petitioner was unable to care for the child on her own without endangering the health, safety, and welfare of the child and that there was no evidence of any reliable family support to suggest that petitioner could parent the child with help. The circuit court also terminated petitioner's parental rights to the child upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The circuit court further ordered that petitioner was prohibited from engaging in post-termination visitation with the child without further order granting permission for the same. Petitioner appeals the October 29, 2020, dispositional order terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing

---

[3]The father's parental rights were also terminated during the proceedings below. The permanency plan for the child is adoption in a kinship placement.

court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period when she demonstrated that she was likely to comply with the same. Petitioner argues that she provided the circuit court with documents regarding her ongoing treatment and counseling, testified that she would live with her stepmother, passed all her drug screens, and participated in supervised visits with the child. Despite this evidence, the circuit court found that petitioner failed to truly acknowledge the conditions of abuse and neglect and denied her motion for an improvement period. Petitioner contends that she "meaningfully acknowledged her[] own foibles that maligned her ability to properly parent her child(ren) . . . as demonstrated by her attending parenting skills classes, passing drug screens[,] and attending/participating in visitation." Moreover, petitioner asserts that she corrected the conditions of abuse from the prior proceedings, as evidenced by the fact that she immediately kicked the child's father out of the home after he struck her in the face. Having reviewed the record, we find no error.

Although she does not list her adjudication as an assignment of error, petitioner briefly argues that she was wrongly adjudicated as an abusing parent of C.S., as she kicked the father out of the home after he engaged in domestic violence against her and sought out parenting classes on her own. This Court has previously noted that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "neglected child" as a child

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education,

5

when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Here, petitioner's parental rights to two older children were terminated based upon her drug abuse, poor decision-making, physical abuse, and refusal or inability to accept that her actions caused the abuse. Ample evidence was presented during the proceedings below to establish that petitioner was incapable of understanding how her actions led to the abuse of her older children and had poor decision-making skills which could not be remedied through the provision of services. Indeed, despite being the subject of prior proceedings wherein she admitted that she should not have left her children with a complete stranger, petitioner met C.S.'s father, a stranger, moved in with him just two days later, and was pregnant with C.S. within the week—all of which occurred immediately prior to the final dispositional hearing in the prior proceedings. This situation eventually led to domestic violence in the home and, although petitioner kicked the father out of the home after he struck her, she struggled to understand how her actions endangered the child. Simply put, petitioner is unable to remedy the conditions of abuse and neglect, and C.S.'s wellbeing is threatened by petitioner's inability to supply the child with proper supervision and care. Therefore, we find no error in the circuit court's adjudication of petitioner as an abusing or neglecting parent.

We further find no error in the circuit court's denial of petitioner's motion for an improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

The evidence supports the circuit court's finding that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Testimony established that petitioner's situation could not be improved with services, that she was unable to apply good parenting concepts to different situations that could arise, and that she was likely unable to make a good decision when faced with an unfamiliar situation. While it is true that petitioner sought out services, attended parenting classes, visited with the child, and seemed able to perform simple daily tasks, the continued provision of services would not improve petitioner's ability to make positive long-term decisions regarding the child's health and welfare, and she remains unable to apply good parenting concepts to situations that will arise in her future. As noted above, a circuit court may deny a parent an improvement period when no improvement is likely. *Tonjia M.*, 212 W. Va. at 448, 573 S.E.2d at 259. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights. Petitioner asserts that there were two alternatives to terminating her parental rights: 1) the circuit

6

court could have implemented a limited termination analogous to a guardianship and 2) petitioner could have been provided parenting support in making proposed decisions in the future. According to petitioner, either option could have been implemented here, as petitioner's stepmother was available to assist petitioner in caring for the child and making decisions. Indeed, even Ms. Nelson opined that petitioner could be capable of parenting the child with the assistance of an appropriate, responsible adult. According to petitioner, she demonstrated that she is able to improve her parenting, as she sought out services on her own and actively participated in the same. Petitioner states that the circuit court acknowledged these improvements and that it is "confounding" and "disingenuous" to claim that petitioner cannot substantially correct the conditions of abuse and neglect in the near future with the assistance of her stepmother.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Further,

> "[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009).

Here, there was no indication that petitioner could adequately care for the child even with long-term assistance. While petitioner cites to Ms. Nelson's testimony that she might be able to care for the child if she lived with another responsible adult who could assist her, petitioner's plan to reside with her stepmother was not feasible, as both failed to appreciate the limitations of petitioner's abilities and believed that petitioner was capable of parenting the child unassisted when the evidence demonstrated that was not the case. Moreover, Ms. Nelson opined that petitioner's decision-making capacity could not be improved through the provision of services, and the DHHR indicated that, as a result, it was unable to provide long-term intensive assistance to petitioner that would satisfactorily protect the child under the circumstances. As noted above, petitioner obtained her own services, and was eventually offered services by the DHHR, but remained incapable of correcting the conditions of abuse and neglect. Having reviewed the record, we find that the DHHR presented sufficient evidence that petitioner, despite her best efforts, did not have the ability to care for the child even with intensive long-term assistance. To the extent petitioner advocates for a change in the law regarding intellectually disabled parents, we decline

to address this argument given the overwhelming evidence that petitioner is unable to parent the child on her own or with help. Accordingly, we find no error in this regard.

Lastly, petitioner argues that the circuit court erred in denying her post-termination visitation with the child. Petitioner asserts that she and the child shared a bond that necessitated that she be granted post-termination visitation and that the child has a right to continued association with her. Petitioner further contends that her conduct and circumstances should not prevent her from having visitation with the child.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

First, we note that petitioner did not request post-termination visitation with the child during the proceedings below. Moreover, petitioner fails to cite to any evidence in the record demonstrating that post-termination visitation is in the child's best interest. In any event, we note that the circuit court's order states that petitioner shall not have further contact with the child "without further order of th[at c]ourt granting permission for the same." Accordingly, the circuit court has left an avenue for petitioner to seek post-termination visitation by requesting permission from the circuit court and demonstrating that continued visitation or other contact is in the child's best interest. Therefore, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

8